[No. 33395. *En Banc.* May 24, 1956.]

LOUISE B. ADAMS, *Appellant*, v. NELLIE THIBAULT *et al.*, *Respondents.*[1]

*Tonkoff, Holst & Hopp* and *Hugh B. Horton,* for appellant.

*Moulton, Powell & Loney,* for respondent Hartford Accident & Indemnity Company.

FINLEY, J.—In this appeal, we must determine whether the trial court acted properly in dismissing with prejudice an action for damages for an allegedly wrongful attachment of the plaintiff's automobile. The underlying or basic legal question is whether the posting of a redelivery bond by a defendant in attachment proceedings, and his repossession of his property thereunder, constitutes a waiver of damages in

[1] Reported in 297 P. (2d) 954.

a lawsuit subsequently initiated by him for wrongful attachment.

In April, 1954, Nellie Thibault and Leo Thibault instituted an action against Louise Adams, seeking to recover a money judgment in excess of twenty-three hundred dollars. In connection therewith, the Thibaults obtained a writ of attachment. A bond for the attachment was issued by the defendant Hartford Accident & Indemnity Company. In execution of the writ of attachment, the sheriff took possession of the automobile of Louise Adams. On May 24, 1954, she posted a redelivery bond and regained possession of her automobile. The lawsuit of the Thibaults for a money judgment against Louise Adams went to trial. The Thibaults *lost, and judgment was entered dismissing their case with prejudice.*

Louise Adams, as a plaintiff, instituted the instant lawsuit for wrongful attachment. She claimed damages for (a) the loss of the use of her automobile, (b) attorney's fees and costs incurred in the defense of the original action, and (c) exemplary damages in the sum of thirty-five hundred dollars. As the basis for her lawsuit, she alleged the issuance of the writ of attachment was wrongful, oppressive, and malicious. The trial judge sustained a demurrer to Louise Adams' complaint and dismissed her lawsuit with prejudice. This disposition of the matter was based upon the decision of the court in the case of *Gutter v. Joiner,* 56 Wash. 202, 105 Pac. 457. Louise Adams initiated the instant appeal.

In the *Gutter* case, the court held that the posting of a *redelivery bond* by a defendant whose property had been attached constituted a waiver by that defendant of any subsequent right of action for damages for wrongful attachment. The pertinent statutes are:

*RCW 7.12.080:* "In an action on the bond, the plaintiff therein may recover, if he shows that the attachment was wrongfully sued out, and that there was no reasonable cause to believe the ground upon which it was issued to be true, the actual damages sustained and reasonable attorney's fees to be fixed by the court; and if it is shown that the attachment was sued out maliciously, he may recover

exemplary damages, nor need he wait until the principal suit is determined before suing on the bond."

*RCW 7.12.250*: "If the defendant, at any time before judgment, causes a bond to be executed to the plaintiff with sufficient sureties, to be approved by the officer having the attachment, or after the return thereof, by the clerk, to the effect that he will perform the judgment of the court, the attachment shall be discharged and restitution made of property taken or proceeds thereof. The execution of such bond shall be deemed an appearance of the defendant to the action."

*RCW 7.12.270*: "The defendant may at any time after he has appeared in the action and before he has given bond to the effect that he will perform the judgment of the court, apply on motion, upon reasonable notice to the plaintiff, to the court in which the action is brought, that the writ of attachment be discharged on the ground that it was improperly or irregularly issued."

*RCW 7.12.290*: "If upon application it satisfactorily appears that the writ of attachment was improperly or irregularly issued, it must be discharged."

In *Brady v. Onffroy*, 37 Wash. 482, 79 Pac. 1004, the defendant secured a discharge of an attachment by posting a redelivery bond. Thereafter in the initial lawsuit, judgment was rendered *against the defendant*, and the plaintiff in the initial lawsuit proceeded against the surety company on the redelivery bond. The surety denied liability because of an alleged irregularity in the attachment proceedings. The court, in the *Brady* case, held that, by posting the redelivery bond, the original attachment defendant and his surety had waived their right to question the regularity of the attachment proceedings.

The decision in the *Gutter* case, *supra,* was based almost entirely on language quoted from the *Brady* case. However, the facts were entirely different in the two cases. In the *Gutter* case, the defendant gave a redelivery bond and regained possession of the attached property without first moving against the attachment. A judgment was subsequently rendered against the attachment plaintiff and in favor of the attachment defendant. The latter brought an action on the attachment bond to recover damages allegedly

sustained. The majority of the court held that he had waived his right to do so and cited the *Brady* case. The significant distinction between the *Brady* case and the *Gutter* case was recognized and clearly explained in Judge Parker's dissenting opinion in the *Gutter* case. He said:

"In my opinion the authorities cited, as well as the numerous citations in *Brady v. Onffroy*, 37 Wash. 482, 79 Pac. 1004, go no farther than to support a holding to the effect, that when a redelivery bond is given, the defendant and his sureties thereby waive the right to question the attachment proceedings *in that case or in any proceeding wherein a judgment rendered against defendant in that case is sought to be enforced. But it does not follow that when the defendant successfully resists plaintiff's claim upon the merits and judgment is rendered accordingly,* as is here alleged, *he has waived actual damage caused by the seizure under the attachment, by the giving of redelivery bond and reclaiming his property.*

". . . There is sound reason for holding that the giving of a redelivery bond is in effect an admission of the regularity of the attachment so far as defenses to *the attachment proceedings* then available to defendant are concerned. But it certainly cannot be said that the giving of a redelivery bond is a waiver of all actual damage on account of the wrongful attachment, when such wrongfulness results from the nonexistence of the debt alleged as a basis of the attachment, when such fact cannot be invoked to show the wrongful suing out of the attachment until the original suit has been determined in defendants' favor upon the merits." (Additional italics ours.)

The result reached in the majority opinion in the *Gutter* case is not supported by the prevailing rule in other jurisdictions. *St. Joseph Stock Yards Co. v. Love,* 57 Utah 450, 195 Pac. 305, 25 A. L. R. 569; *Heine v. Wright,* 76 Cal. App. 338, 244 Pac. 955; *Anvil Gold Min. Co. v. Hoxsie,* 125 Fed. 724; *Alexander v. Jacoby,* 23 Ohio St. 358; 7 C. J. S. 667, § 528; 5 Am. Jur. 192, § 985; 32 L. R. A. (N.S.) 408.

In *St. Joseph Stock Yards Co. v. Love, supra,* the Utah court discussed the *Gutter* case as follows:

"It is further urged that, in case a redelivery bond is given by the defendant in the action, and his property is released therefrom and delivered to him, he waives his right to an

action for damages for issuing the writ of attachment. Such is the holding of the Supreme Court of Washington in the case of *Gutter v. Joiner,* 56 Wash. 202, 105 Pac. 457, under a statute precisely like our statute, section 6726, supra. . . . We are not prepared to concede that the law, under a statute like ours, is correctly stated in the majority opinion in the Washington case. We think the law is correctly reflected in the dissenting opinion of Mr. Justice Parker, where it is stated that at least those damages arising before the redelivery bond is given cannot be held to be waived. . . . We are therefore clearly of the opinion that under our statute the defendant does not waive the right to recover actual damages by reason of giving a redelivery bond. We remark that it may well be that in giving a redelivery bond one may waive the irregularity, if any, in issuing the writ of attachment."

The rationale of the rule prevailing in other jurisdictions is discussed in *Anvil Gold Min. Co. v. Hoxsie, supra,* as follows:

"The reason why the defendant in an attachment suit who gives an undertaking for the release of the attachment may be deemed to have waived his right to question the regularity and correctness of the attachment proceedings is because there is no practical method provided for afterwards determining in the progress of that case the question whether there were irregularities or defects in such proceedings or not. The only issues left to be determined, after the release of the attachment, are those relating to the cause of action; and where, as in this case and under the statute under consideration, these issues are the same as the cause of attachment, they are necessarily determined by the judgment, and all other questions may be deemed to have been waived. But this waiver extends no further, and there is no implied estoppel beyond that which appears upon the face of the attachment proceedings, and relating to such proceedings, that will deprive the defendant of the right to recover all costs he may have incurred and all damages he may have sustained by reason of the attachment, if it is finally determined that the plaintiff had no cause of action. " . . . There is no principle of waiver or law of estoppel in this case, or in any of these cases, that deprives the defendant in the attachment suit of his right of action against the plaintiff and the sureties on the attachment bond to recover damages sustained while the attachment is in force, and this we believe to be the law upon the subject."

■ We are further impressed by the fact that the rule in the *Gutter* case is not in harmony with the general rule that one has a duty to minimize his damages. More specifically, a defendant in attachment proceedings has a duty to mitigate his damages where he is financially able to do so. 7 C. J. S. 374, § 179; 5 Am. Jur. 140, § 902; *Gray v. American Surety Co. of New York,* 129 Cal. App. (2d) 471, 277 P. (2d) 436; see, also, cases collected in an annotation in 33 A. L. R. 1479.

In *Hoff v. Lester,* 25 Wn. (2d) 86, 168 P. (2d) 409, 164 A. L. R. 751, an action in replevin, this court held that the right to recover damages for the detention of property was not lost by the failure to claim by affidavit supported by bond the immediate possession of the property. The court, however, stated that the plaintiff cannot be compensated for damages which he might have prevented by reasonable efforts and expenditures—that one has a duty to minimize his damages. It is apparent from the following language in the *Hoff* case that the principle should be applicable in an action for damages on an attachment bond:

"While it is true that many of the authorities refer to cases in which property was attached, rather than property sought to be recovered by way of replevin, *there is no essential difference between the two situations,* in so far as the question now under discussion is concerned." (Italics ours.)

See *Radley v. Raymond,* 34 Wn. (2d) 475, 209 P. (2d) 305; 164 A. L. R. 758.

■ In conclusion, the rule announced in the *Brady* case is sound and is supported by the weight of authority. Drake on Attachments 309, § 332; 89 A. L. R. 267; *Moffitt v. Garrett,* 23 Okla. 398, 100 Pac. 533. We are convinced that by reason of an improper application of the rule announced therein the majority of the court reached an erroneous conclusion in the *Gutter* case. Therefore, pursuant to the discussion hereinbefore, we now approve and adopt the views expressed in the dissenting opinion in the *Gutter* case, and we hereby expressly overrule the decision of the majority in the case of *Gutter v. Joiner, supra.*

The judgment of the trial court dismissing appellant's complaint with prejudice should be reversed and the case

remanded for proceedings in accord with the views expressed herein. It is so ordered.

ALL CONCUR.